Clayton, *et al.*, *vs.* Carey, *et al.*

---

# Moses M. Clayton and others, *vs.* John Carey and others.

Where there is a complete remedy at law, except in a few peculiar instances in which there is concurrent jurisdiction, the powers of a court of equity cannot be invoked.

*Mandamus* is the proper remedy for the intrusion, usurpation or unlawfully holding of the office of trustee of a church incorporated under the general incorporation law of this State.

APPEAL from the Equity Side of the Superior Court of Baltimore city.

The bill in this case was filed on the 16th of February 1852 by the appellants, charging that they are members of

a religious corporation styled "The Colored Peoples' First Baptist Church in the city of Baltimore," originally incorporated in March 1837; that complainant, Clayton, was for many years the minister in charge of said congregation, and they have been duly elected trustees of the corporation. That the corporation was the owner of a house and lot on Lewis street, in said city, in which they have been in the habit of worshipping. That five of the defendants, professing to have control of said building, did, in November 1851, fraudulently and wilfully conspire and collude with Benjamin Brown, the other defendant, for the purpose of depriving complainants of their just rights and privileges in said building, and with that view pretended to sell the property to Brown, who under color of this sale, with the aid of the other defendants, took and kept possession of the building, and they have excluded complainants therefrom, whereby they are prevented from worshipping therein, and enjoying their religious and legal rights and privileges. The bill then prays for an injunction, enjoining the defendants from using, occupying or entering in the said church, except for the purpose of worshipping therein as other members, which was accordingly granted. The injunction was afterwards, upon petition, enlarged so as to command the defendants not to interfere with complainants in getting and keeping possession of the premises.

The answers deny that complainants were, at the time of filing their bill or at any time since, the trustees of said corporation, or that they were as trustees or individuals then or since, the owners of said lot and building, and aver that defendants are the trustees, duly elected to serve for one and two years from the 1st of March 1850 and 1851, and that defendant, Carey, was, on the 25th of June 1849, duly elected minister, &c., congregation. They further aver that the sale to Brown was *bona fide* and legal, and with his consent they continue to hold meetings in said building for religious public worship, and deny that they have excluded the complainants from attending said meetings.

A motion was then made to dissolve the injunction and

testimony taken, the purport of which sufficiently appears from the opinion of this court, and in the following opinion of the court below, (FRICK, J.,) delivered upon the hearing of this motion:

"It would seem to be sufficient for the sanction of the court, in their action upon this motion, to refer to that part of defendants' answer which expressly denies that the complainants are excluded from attending the meetings held for religious worship in the church; nor does the testimony taken to sustain the injunction establish any such actual exclusion as is alleged. It rather discloses a conflict between these parties about the right to administer the affairs of the corporation, asserted by two distinct bodies of trustees, which in this stage of the proceedings is not to be decided. It sufficiently appears that the defendants, in March 1851, were duly elected under the provisions of the charter for one year, and that they were in possession, exercising their functions as trustees, at the time of the alleged sale to Brown.

"How far that sale was legal, and if so how far it operated upon the corporate franchises, may be matter for future inquiry; and if the defendants, after this sale, were elected trustees with the laudable intention to continue the corporate organization, it still remains a question, whether such election superseded the prior trustees in their character as trustees of the franchise, even if the property passed from them by the sale. Whether they could or have divested themselves as depositories of the franchise by any act or declaration on their part, I am not now to decide. The bill of complaint admits they were in possession before the sale, and asserts that they kept possession after the sale, (though it avers such possession was fraudulent.) But this possession in either aspect does not and has not (if the answer is true,) exclude the complainants from participation in the religious exercises of the church, which the defendants claim to control, under their election and possession of one year from the 1st of March 1851. I cannot as yet say they disqualified themselves or dissolved the franchise by the sale to Brown, without pro-

nouncing in advance upon the validity of that sale, which is matter only for the final hearing. By dissolving the injunction, I mean to leave the complainants for the present where they originally were at the filing of the bill, in the full legal and religious right to worship in the church under the administration of the defendants, until the final decision upon the merits of the case, as it shall hereafter be presented." An order was then passed dissolving the injunction, from which the complainants appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON, MASON and TUCK, J.

*Charles F. Mayer* and *O. Horwitz* for the appellants.

1st. The only proper evidence of the corporate proceedings is the books of the corporation, and they show no authorization to sell the property in question. They show no means prescribed for selling at private sale, nor limitation of price, nor that a due number of the congregation attended, nor that a majority of all the members of the congregation, according to the articles of incorporation, authorised the sale. *Angel and Ames on Corp.*, 378, 379, *(1st Ed.,) ch.* 17, *sec.* 2.

2nd. That there was an *implied* resignation in this case by the first trustees, is clear from their acts and their declining to serve as trustees, because of their concurring in the disposition of the church to Brown; as to implied resignation, and that a new election implies acceptance of resignations, see *Angel and Ames*, 254, *(1st Ed.,) ch.* 11, *sec.* 11. Acts inconsistent with the duty (as was the conduct here,) of officers, the same authority shows, amount to an implied resignation.

3rd. Whatever may be the force of other positions, it is enough for us to point out the utter futility of the pretension, that a sale has been validly made, to maintain our injunction; *that sale being virtually relied on, and as matter in avoidance* to justify our exclusion, and proving to be the only ground of opposition to our acknowledged original rights. It is but matter in avoidance not substantiated, but, on the contrary,

shown by the defendants themselves to be incapable of proof and without any effect.

*T. P. Scott* for the appellees.

The title and all the equities of the complainants are denied by the defendants, and the injunction would have been properly dissolved on bill and answer. The evidence shows conclusively that defendants were the rightful trustees of the church. The bill having alleged a fraudulent pretended sale, the answers are responsive in denying the fraud, and are sustained by the evidence in regard to the whole transaction. But even if defendants were mistaken in supposing that a sale of the property produced a dissolution of the corporation, yet they continued trustees in law until the next general election. The appellees therefore ask an affirmance of the order dissolving the injunction, and that this court will dismiss the bill. 4 *Gill,* 471, 478.

LE GRAND, C. J., delivered the opinion of this court.

We concur with the Superior Court in the opinion pronounced on the motion to dissolve the injunction, which had been previously granted. The equity of the bill is completely sworn away by the answers, and the proof fully sustains the denials contained in them.

It sufficiently appears from the evidence, that the defendants were legally elected trustees of the church, in March 1851, and there is a total failure of proof on the part of the complainant to show they had been denied the right to enter the building and participate in religious worship.

Besides, the second section of the act of 1828, ch. 78, provides the remedy of *mandamus* for all cases of "intrusion or usurpation, or of any breach or violation of any terms, conditions, privileges or franchises, or of unlawfully holding of any office under any charter or incorporation granted by this State;" and the principle is well settled, that where there is a complete remedy at law—except in a few peculiar in-

stances in which there is concurrent jurisdiction—the powers of a court of equity cannot be invoked.

*Order affirmed with costs.*